# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| JOHN MATTHEW NORTON, | ) | |
|---|---|---|
| Plaintiff, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| v. | ) | Case No: 2:08cv00062 |
| | ) | |
| M. P. STIDHAM, et al., | ) | By: PAMELA MEADE SARGENT |
| Defendants. | ) | UNITED STATES MAGISTRATE JUDGE |

This matter is before the undersigned on the Motion For Summary Judgment filed by defendant M.P. Stidham, (Docket Item No. 52), ("Stidham Motion"), and the Motion For Summary Judgment filed by defendant Scott Stanley, (Docket Item No. 57), ("Stanley Motion") (collectively "Motions"). The plaintiff, John Matthew Norton, has responded to the Motions, and the defendants have replied. The Motions are before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). The Motions were argued before the undersigned on December 17, 2009. Based on the arguments and representations presented, and for the reasons stated in this Report and Recommendation, the undersigned is of the opinion that the Motions should be granted.

## I. Facts[1]

On September 5, 2007, Norton was arrested in Knoxville, Tennessee, pursuant to three separate arrest warrants on felony charges of breaking and entering, conspiracy to commit a felony and grand larceny, all of which allegedly occurred in Dickenson County, Virginia, on May 25, 2007, arising out of the theft of a safe containing more than $50,000 from the residence of Barney Eugene Moore. These arrest warrants were procured by defendant M.P. Stidham, a Sheriff's Deputy with the Dickenson County, Virginia, Sheriff's Department, following an investigation of the theft of Moore's safe, conducted by Stidham and defendant Scott Stanley, an investigator with the Dickenson County, Virginia, Sheriff's Department. Stidham obtained the arrest warrants on August 31, 2007, pursuant to criminal complaints and affidavits submitted to Virginia Magistrate Betty J. Greear. The relevant facts surrounding the investigation of the theft and procurement of the arrest warrants are set out below.

On May 25, 2007, Moore called Dickenson County 911 dispatch to report a breaking and entering at his residence. Stidham responded to the 911 call. Moore reported that two men who had worked for him in his drywall business had broken into his residence and stolen a safe containing more than $50,000 in cash. Moore identified one of the men to Stidham as Destry Dangerfield, but he stated that he knew the other man only as "Matt." On the day following the breaking and entering report, Stanley began assisting with the investigation. Stidham gave the

---

[1] For purposes of the disposition of the Motions, the facts as set forth herein are construed in the light most favorable to Norton, the nonmoving party. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

name of Destry Dangerfield and the description of the individual named Matt to Stanley.  Stanley interviewed Moore, who confirmed to him that two men were involved in the breaking and entering of his residence, specifically, Destry Dangerfield and "Matt."  Moore described "Matt" as being in his 20s, under six feet tall, approximately 175 pounds and having dark hair.  Moore further reported to Stanley that Dangerfield and "Matt" might head to Knoxville, Tennessee, or to McDowell County, West Virginia, where Dangerfield had relatives.

Later, in July 2007, Stanley received a call from a Sergeant Matt Hawkins with the Jonesborough, Tennessee, Police Department. Stanley has stated that Hawkins informed him that he was investigating a robbery of a pharmacy in Jonesborough and that the suspect in that robbery case, Eric Dwayne Matney, had stated that he had information about a breaking and entering in Dickenson County, Virginia.  Specifically, Matney identified the men involved in the breaking and entering of Moore's residence as Destry Dangerfield and John Matthew Norton.  At that point, Stanley requested that Hawkins fax a photograph and driver's license information on Norton, which he did on July 25, 2007.  Hawkins also sent a listing of individuals with the name John M. Norton from Tennessee driver's license records, as well as an address for John Matthew Norton in Knoxville, Tennessee, and the driver's license photograph of John Matthew Norton.

Stanley and Hawkins spoke multiple times by telephone, with Stanley recalling three such calls.  Hawkins testified at his deposition that he did not recall how he first heard the name John Matthew Norton, but he was certain that when Matney was extradited to Tennessee from West Virginia, he stated that Dangerfield was with John Matthew Norton during the breaking and entering of Moore's

residence.  Hawkins testified that he could not recall all the details of his telephone conversations with Stanley, but he did not dispute Stanley's testimony as to the following: (1) they spoke several times by telephone; (2) Hawkins relayed information to Stanley from Matney; and (3) Matney claimed that John Matthew Norton was involved in the breaking and entering of Moore's residence.

Stanley also was in contact with Moore several times over the course of the investigation into the breaking and entering.  Stanley testified that after he received the driver's license photograph of John Matthew Norton, he showed the photograph to Moore, who stated "it's not the best picture in the world but it looks like him."  Moore testified during his deposition that he could have made this statement to Stanley, but he did not recall.  Instead, Moore recalled that he viewed the photograph of Norton at the request of Dickenson County Sheriff Bobby Hammons on a day that Stanley was not available and that he told Hammons the photograph was not of the "Matt" who was involved in the breaking and entering of his residence. There is no evidence that either Moore or Sheriff Hammons ever conveyed this information to Stidham or Stanley.

It is undisputed that Stidham and Stanley also used a check of computer records to further investigate any links between Dangerfield and John Matthew Norton.  Stidham and Stanley processed a law enforcement report on August 29, 2007, which showed that Dangerfield was a possible associate of the plaintiff John Matthew Norton.  In particular, this report showed several addresses and relatives common to the plaintiff and Dangerfield. Stanley further noted that the information from the Tennessee driver's license of John Matthew Norton matched the description of "Matt" given to him by Moore.

Stanley discussed the results of his investigation with Stidham, identifying John Matthew Norton as the man who was with Dangerfield during the breaking and entering of Moore's residence. Stanley reported to Stidham that Moore had identified the photograph of John Matthew Norton as the "Matt" who was with Dangerfield. Stanley provided a handwritten note to Stidham via an intraoffice mailbox which stated as follows: "Mike, this is the one that was with Dangerfield on Moore's B/E. The one that was arrested in TN for robbing the pharmacy says this is the one. John Matthew Norton, ... Dave Road, Knoxville, TN."

Based upon the information provided by Stanley, as well as all the other information compiled in the case, Stidham completed a criminal complaint on August 31, 2007, seeking an arrest warrant for John Matthew Norton. The Criminal Complaint presented alleged:

> On the above date, I received a call of a B&E on Lick Creek. Arrived on scene to find the back door of Barney Gene Moore's residence had been kicked in. Mr. Moore stated he returned to home to find Destry Dangerfield and a man called Matt coming out of his house. They fled the scene. Mr. Moore stated his safe was taken and had $50,000 in it. Mr. Norton was identified as the subject that was with Dangerfield. He admitted to another subject they stole 50 to 75 thousand dollars from Barney Eugene Moore.

Insofar as the last line of these allegations may be interpreted as a statement that Norton admitted to stealing from Moore, this statement is false. There is no evidence that Norton ever made any incriminating statement, and, instead, has repeatedly denied his involvement.

Magistrate Betty Greear issued an arrest warrant for Norton the same day. Thereafter, Norton was arrested and extradited to Virginia. At his first court appearance on September 13, 2007, when Moore saw Norton in person, he informed Stanley that this was not the man named "Matt" who was involved in the breaking and entering of his residence. Norton was released from custody the same day.

Thereafter, on October 22, 2008, Norton filed a Complaint against Stidham, alleging violations of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. Thereafter, on April 30, 2009, Norton's motion to file an Amended Complaint was granted by the court. The Amended Complaint merely added Stanley as a party defendant.

In the Motions now before the court, the defendants argue that summary judgment should be granted in their favor on the following grounds: (1) they are entitled to qualified immunity because an objectively reasonable basis existed for applying to a neutral magistrate for the arrest warrants; (2) Norton has failed to state a § 1983 claim because probable cause existed to seek the arrest warrant; (3) Norton has failed to state a § 1983 Monell claim; (4) Norton has failed to plead the elements of malicious prosecution and such elements cannot be proven; and (5) Norton cannot show any wrongdoing that would constitute gross negligence on the part of the defendants. Stanley further argues that because he did not obtain the warrant for Norton's arrest, Norton's claim against him cannot succeed.

*II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to the plaintiff on the defendants' Motions. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

In his Amended Complaint, Norton claims that the defendants violated his Fourth and Fourteenth Amendment rights by obtaining the three felony warrants

without probable cause.[2] A majority of Supreme Court justices have held that the right to be free from prosecution without probable cause is not a substantive due process right under the Fourteenth Amendment, but rather a violation of the right to be free from unreasonable seizures under the Fourth Amendment. *See Albright v. Oliver,* 510 U.S. 266, 268 (1994). Therefore, the court will address Norton's Fourth Amendment claim only.

The courts have recognized two distinct causes of action under § 1983 for violations of a person's Fourth Amendment right against unreasonable seizure. *See Brooks v. Winston-Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). One of these causes of action is for false or unlawful arrest or arrest without legal process. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007). A cause of action for false or unlawful arrest cannot be pursued, however, when a person is arrested based on a warrant. *See Bellamy v. Wells*, 548 F. Supp. 2d 234, 237 (W.D. Va. 2008). The undisputed facts in this case show that Norton was arrested pursuant to a warrant. Therefore, Norton has no claim for a constitutional violation for false or unlawful arrest or arrest without legal process.

The other cause of action recognized for violation of a person's Fourth Amendment right against unreasonable seizure is a claim for malicious

---

[2]While Norton's Complaint and Amended Complaint purport to state three counts, the only claim alleged is that the defendant violated Norton's constitutional rights by arresting him without probable cause. Insofar as Count 2 should be interpreted to allege a cause of action under Virginia state law for malicious prosecution, it must fail on the same basis as the Fourth Amendment claim based on malicious prosecution, as explained below, in that the undisputed evidence shows that probable cause existed for Norton's arrest. Furthermore, Count 3, which is entitled "Gross Negligence," contains no claim but only the prayer for relief.

prosecution[3] or abuse of judicial process. *See Lambert*, 223 F.3d at 260-62. To pursue such a claim, Norton must show an unreasonable seizure in violation of the Fourth Amendment based on (1) the initiation or maintenance of a proceeding against him by the defendants, (2) termination of that proceeding favorable to him, and (3) lack of probable cause to support that proceeding. *See Lambert,* 223 F.3d at 260, 262 n.2; *Brook*s, 85 F.3d at 183-84, n.5. The defendants argue that summary judgment should be entered in their favor on Norton's Fourth Amendment claim because the undisputed evidence shows that probable cause existed for his arrest and even if probable cause did not exist, they are entitled to qualified immunity. The court finds that there is no genuine issue of material fact and that probable cause did exist to support Norton's arrest. In particular, Stidham and Stanley had obtained information from Moore that Dangerfield and "Matt" were the individuals who committed the breaking and entering. At a later date, Stanley learned from an officer in Tennessee that a suspect in an unrelated crime had identified John Matthew Norton as the "Matt" involved in the breaking and entering of Moore's residence. Tennessee driver's license information faxed to Stanley by the Tennessee officer matched the general description of "Matt" supplied by Moore. Furthermore, Stanley informed Stidham that Moore had positively identified the plaintiff, John Matthew Norton, as "Matt" from the faxed driver's license photograph. Additionally, a law enforcement report run by the defendants showed that Dangerfield and John Matthew Norton were potential relatives, supplying a

---

[3] The claim will be referred to as a "malicious prosecution" claim, despite the court's recognition that the Fourth Circuit has recently stated that "there is no such thing as a '§ 1983 malicious prosecution claim.' What we termed a 'malicious prosecution' claim in *Brooks* is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution – specifically, the requirement that the prior proceeding terminate favorable to the plaintiff." *Snider v. Lee*, 584 F.3d 193, 199, (4th Cir. 2009) (quoting *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000)).

further link between the two individuals. All of this being the case, I find that the facts that Stidham had before him in seeking the three felony warrants constituted probable cause.

The court also finds that the undisputed facts of this case show that the defendants are entitled to the protection of qualified immunity. Qualified immunity serves to protect government officials performing discretionary functions from civil liability insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow*, 457 U.S. at 818. Furthermore, the focus of qualified immunity is on what the officer reasonably perceived, and the court is not to look at the actions with the benefit of hindsight. *See Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). In determining whether to grant immunity, the court must identify the constitutional right claimed to have been violated, decide whether that right was clearly established at the time of the violation and, if so, determine whether a reasonable person would have known their actions violated the right. *See Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996) (citing *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). However, for the determination of whether the defendants violated clearly established constitutional rights, the inquiry is to be undertaken in the specific context of this case, and not as a general proposition. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2002) (overruled on alternate grounds)).

In the Fourth Circuit, there is a strong sentiment questioning whether malicious prosecution claims are entitled to constitutional protection. In *Lambert*, the court indicated that the *Albright* decision expressed a "fairly strong sentiment

against constitutionalizing malicious prosecution." 223 F.3d at 261. However, the court went on to state that the *Albright* opinion did not ultimately rule on the applicability of malicious prosecution in Fourth Amendment cases. *See Lambert,* 223 F.3d at 261. In two unpublished opinions, which the court recognizes are not of precedential value,[4] the Fourth Circuit has recognized that, in the wake of *Albright,* the right to be free from malicious prosecution is not grounded in the Constitution, which would not make it a "clearly established" constitutional right. *See Osborne v. Rose*, 1998 WL 17044, at *4-5 (4th Cir. Jan. 20, 1998) (unpublished) ("We do not believe, however, that the mere possibility that [malicious prosecution] claims might survive after *Albright* demonstrates that a constitutional right had reached the status of being clearly established."); *Brown v. Daniel*, 2000 WL 1455443, at *3 (4th Cir. Sept. 29, 2000) (unpublished) (because plaintiff "had no clearly established right to be free from 'malicious prosecution' when the alleged misconduct occurred [defendants] are entitled to qualified immunity on the malicious prosecution claim.") Accordingly, there is much skepticism as to whether the right to avoid malicious prosecution is a "clearly established" constitutional right.

Assuming, however, that the right to be free from malicious prosecution is a clearly established constitutional right, I find that the undisputed evidence in this case shows that a reasonable person in the defendants' positions would not have known that their actions violated that right.

---

[4] *See* Fourth Circuit Court of Appeals Local Rule 36(c). *See also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (unpublished decisions have no precedential value and are only entitled to the weight generated by the persuasiveness of their reasoning).

In *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court set forth the standard for analyzing immunity of officers seeking arrest warrants. The Supreme Court held that the central focus was whether the request for arrest warrants was objectively reasonable. *Malley*, 475 U.S. at 341. In other words, if a well-trained officer in the defendant's position would have known that his affidavit failed to establish probable cause and that he, therefore, should not have applied for the warrant, then the application was not objectively reasonable, and such officer would not be entitled to the defense of qualified immunity. *See Malley*, 475 U.S. at 343-45. The Court stated that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [citation omitted] will the shield of immunity be lost." *Malley*, 475 U.S. at 344-45.

The undersigned further finds that there is no evidence that Stidham produced a deficient or dishonest warrant affidavit "deliberately or with a 'reckless disregard for the truth.'" *Miller v. Prince George's County, Md.*, 475 F.3d 621, 627 (4th Cir. 2007). While the facts later revealed that it was not, in fact, the plaintiff who committed the breaking and entering of Moore's residence with Dangerfield, there is no evidence that Stidham produced any *intentionally* deceptive or false evidence to the magistrate in an effort to obtain the warrants, nor did he seek the warrants in reckless disregard for the truth. While the evidence presented to the magistrate contained what could be interpreted as a false assertion that Norton had made an incriminating statement, there is no evidence that this false assertion was included maliciously, nor was probable cause lacking in its absence. It is clear that negligence or an innocent mistake does not establish a constitutional violation. *See Miller*, 475 F.3d at 627-28. Here, there is no evidence that Stidham intentionally

misled the magistrate in obtaining the warrants. Although it turns out that Norton was not the individual involved in the breaking and entering of Moore's residence, Stidham's statement in the affidavit that Norton was identified as the suspect who was with Dangerfield was a true statement. Moreover, there is no evidence that Stidham withheld any information from the magistrate in seeking the issuance of the warrants.

It is true that Stidham relied upon Stanley's investigation. For instance, Stidham had been informed by Stanley that Norton had been identified as the person who had committed the breaking and entering with Dangerfield. He further had obtained information from Stanley regarding Norton's address, date of birth, social security number and telephone number, which had been obtained from Tennessee authorities. Moreover, Stidham had been informed that Moore had viewed a photograph of Norton and had stated that, while it was not a good photograph, he believed it was the person involved with Dangerfield. The court notes, contrary to the plaintiff's contention, that it was acceptable for Stidham to rely on other officers in obtaining information that ultimately led him to seek the issuance of the warrants.

Given all of these circumstances, there simply is no evidence that Stidham either deliberately or with reckless disregard for the truth made any false statements to the magistrate or omitted any material facts known to him in obtaining the felony warrants in this case. Moreover, it is well-settled that a magistrate's determination of whether probable cause exists for the issuance of a warrant should be accorded great deference. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). Furthermore, it is well-settled that an arrest based on probable cause

does not violate the Fourth Amendment, even if it is later determined that the wrong individual was arrested. *See Mensh v. Dyer*, 956 F.2d 36, 40 (4th Cir. 1991). Although Norton was wrongly accused of being the individual involved with Dangerfield in the breaking and entering of Moore's residence, it was reasonable to believe, for the reasons stated above, that Norton was, in fact, the "Matt" who had committed this crime. A determination of the reasonableness of an officer's actions and the existence of probable cause must be made on the basis of information that the officer actually possessed at the time or that was then available to him. *See Taft v. Vines*, 70 F.3d 304, 310 (4th Cir. 1995)

As discussed in greater detail above, the defendants proceeded under the belief, and in the undersigned's opinion, rightfully so, that they had probable cause to arrest the plaintiff. These actions were not apparently unlawful, nor were they those of plainly incompetent individuals. *See Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009) (plaintiff's complaint must allege conduct a reasonable official would know is unlawful); *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (quoting, 475 U.S. at 341) ("'all but the plainly incompetent or those who knowingly violate the law are protected'").

Norton asserts that a determination that the defendants acted reasonably would be precluded by their failure to further investigate information obtained from fellow officers, and for failure to "perform a competent and thorough investigation." (Plaintiff's Memorandum In Opposition to Defendant M.P. Stidham's Motion For Summary Judgment, ("Motion"), at 8-11.) For his contention that defendant Stidham should not have relied on a fellow officer's investigation, without further investigation himself, Norton erroneously cites cases

from the United States Court of Appeals for the Ninth Circuit, which, do not stand for the propositions as cited by the plaintiff and also are not controlling precedent in this Circuit. (Motion at 8-9.) The case of *United States v. Bernard*, 623 F.2d 551 (9th Cir. 1980), is cited by Norton as denying qualified immunity to police officers who relied on information obtained from other officers. To the contrary, the court in that case, which is a criminal, not a civil, case held that the officer was entitled to rely on information known to other officers, even though that information was not relayed to him personally. *See Bernard,* 623 F.2d at 561. Moreover, the remainder of the Ninth Circuit cases do not stand for the proposition that reliance upon a fellow officer's investigation cannot support probable cause. The cases, while varying factually, all had independent complications diminishing probable cause, such as, discrepancies in the statements and what was portrayed to the magistrate and no inquiry into the scope of the warrant. This court is of the opinion, and the plaintiff has not produced any precedent to the contrary, that reasonable reliance on a fellow officer's investigation does not prohibit the availability of qualified immunity. Additionally, the court finds the argument that the defendants did not conduct a sufficient investigation to make an arrest, to be without merit. As discussed above, the defendants had evidence indicating that the plaintiff was involved in the crime for which he was charged. While this information turned out to be erroneous, it does not negate the reasonableness of the defendants' actions.

The court wishes to note that while Norton captioned his claim as a 42 U.S.C. § 1983 "Monell Claim," no such cause of action exists here. As the defendants note, a *Monell* claim asserts liability under § 1983 against a municipal government or a county entity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658

(1978).  More specifically, in *Monell*, the Supreme Court held that a *Monell* claim is a method of imposing liability on a municipality or county for the unconstitutional acts of county officers where those unconstitutional acts are committed under policies and practices of the governmental authority. *See Monell*, 436 U.S. 658 (1978).  Here, there simply is no *Monell* claim because no governmental entity has been named as a defendant.  Moreover, as the defendants note in their briefs, there are no allegations contained in Norton's Amended Complaint regarding any policies or practices that would support such a claim.

Based on my findings that probable cause existed and that the defendants' actions are protected by qualified immunity, I do not address Stanley's additional argument that Norton cannot succeed on his claim against him because he did not seek the warrants for Norton's arrest.

## PROPOSED FINDINGS OF
## FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following findings, conclusions and recommendations:

1. There are no genuine issues of any material facts;
2. Probable cause existed to support Norton's arrest on charges of breaking and entering, conspiracy and grand larceny;
3. A government official performing discretionary functions is protected by qualified immunity from civil liability insofar as his conduct does not violate clearly established constitutional rights of which a reasonable person should have known;
4. The defendants in this case reasonably procured the arrest warrants for Norton under the belief that the facts and circumstances

       constituted probable cause;
5. There is no evidence that the defendants produced a deficient or dishonest affidavit "deliberately or with a 'reckless disregard for the truth;'"
6. Probable cause was present, even in the absence of the false assertion contained in the affidavit;
7. Defendant Stidham's reliance upon the investigation of defendant Stanley and other officers does not defeat his claim of qualified immunity;
8. The defendants are entitled to qualified immunity because they proceeded reasonably and, therefore, could not have known that they were violating the plaintiff's rights; and
9. There is no "Monell Claim" asserted because the plaintiff has failed to state a claim against a governmental entity.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends the court grant the Motions and enter summary judgment in the defendants' favor.

## Notice To Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in the matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

**DATED**: This 29th day of December 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE